Jerome MUMFORD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-14792.

Court of Criminal Appeals of Oklahoma.

April 9, 1969.

Carroll Samara and John C. Monk, Jr., Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., H. L. McConnell, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

BUSSEY, Judge.

Jerome Mumford, hereinafter referred to as defendant, was charged by Information in the District Court of Oklahoma County with the crime of Rape in the First Degree. The specific allegation was that this defendant, by force and fear, overcame the resistance of one Sandra Carol Huggins, a female, age seventeen, not his wife, and had sexual relations with her without her consent and against her will.

The defendant, being unable to provide private counsel, was represented by the Public Defender for Oklahoma County.

The case came on for trial by jury on June 7, 1967, and on June 8, 1967, the jury returned a verdict finding the defendant guilty of the crime of Rape in the First Degree and assessed his punishment at 99 years imprisonment. Motion for New Trial was overruled and judgment and sentence was imposed on June 15, 1967.

Defendant filed a pro se petition for post conviction appeal and/or writ of habeas corpus in case No. A–14539. In that case an evidentiary hearing was ordered and held, after which this Court granted post conviction appeal, which is now before this Court.

Briefly stated, the facts adduced on the trial reveal that on the evening of April 8, 1967, Robert Melvin Baker, J. C. Fourkiller, and the victim, Sandra Carol Huggins, attended a drive-in theater on NE 23rd Street, Oklahoma City, Oklahoma. All were riding in the automobile of the victim, with the victim as the driver. When they left the theater, approximately at midnight, they proceeded west on 23rd Street when they were "flagged down" by a man identified by all three as the defendant, who requested a ride to a filling station for gas. The defendant entered the car and when the filling station was found to be closed, requested they drive him to his home. They agreed to do so and in the vicinity of Main Street and the railroad tracks, the defendant grabbed the keys to the car, demanded money from the two males indicating he had a gun, then forced them to drive to another area. There he tied the hands of the two males with their shoe strings. Thereafter, using a broken glass bottle, he threatened bodily harm to all three and forced the victim, over her objections, to have sexual relations with him. The defendant then left the scene on foot. The victim and the witnesses promptly reported the matter to the Oklahoma City Police Department. A medical doctor examined the victim shortly before noon on April 9, 1967, and found spermatozoa in her vagina. No testimony was presented on behalf of the defense.

The single assignment of error urged on appeal is that the Public Defender, who represented the defendant during the course of his trial, had not adequately prepared the defense and that his failure to call certain alibi witnesses to testify on behalf of the defendant, constituted such ineffective representation so as to reduce the trial to a farce. Counsel on appeal admit, after having exhaustively examined the record, they are unable to find any error in the trial proceedings which they could seriously urge on appeal. Moreover, they observe and are supported by the record, that the Public Defender interposed proper objections throughout the course of the trial and vigorously cross-examined each of the State's witnesses relative to their identification of the defendant. Their argument, under the single assignment of error raised in their brief, is premised, in part, upon the assertion that the Public Defender only interviewed the defendant two times prior to the trial and that although he was advised by the defendant of the existence of alibi witnesses who would place him at a place other than the scene of the crime, he did not diligently question the defendant relative to their identity, nor did he call defendant's brother and father to testify on his behalf that at the time the crime occurred, he was with them in their home one block from the scene of the crime.

An examination of the record and the testimony adduced at the evidentiary hearing, discloses that the defendant had been in contact with his father and brother and that they had appeared at the courthouse on the day of the trial, but left prior to the time that the case was called for trial and that the Public Defender attempted to reach them by phone, but was unable to do so. The record further reflects that the Public Defender was not anxious to call these witnesses had he been able to reach them by phone, for the reason that he felt that their testimony would place the defendant within one block of the crime

scene and would tend to corroborate the evidence which he anticipated the State would produce. Moreover, the record affirmatively reflects that the Public Defender conducted his own investigation prior to trial.

It is now contended that the trial counsel was remiss in not securing the names of other witnesses who would have placed the defendant at a different place at the time the act was committed. Significantly, defendant refused to take the stand in his own behalf and did not reveal the names of these alleged alibi witnesses until after the jury had returned its verdict. It is equally significant that the defendant had continuously stated that he would hire his own attorney until the Public Defender was notified two days prior to the trial that defendant could not raise the money to secure counsel and that the trial duties would devolve upon the Public Defender. The Public Defender in the instant case was a highly respected and well qualified member of the Bar, with many years of experience in the prosecution and defense of criminal cases and a formidable adversary in the trial of any lawsuit.

Our examination of the record of the trial proceedings and the evidentiary hearing, convince us that he diligently prepared for trial with complete loyalty to his client and exercised the best judgment that his many years of experience dictated. Although we have not clearly enunciated the duty that devolves upon court-appointed counsel in a criminal case, we follow the rule that before a conviction will be set aside on the grounds of inadequate representation by court-appointed counsel, that ineffectiveness of counsel must be such as to reduce the trial proceedings to a farce.[1] Such a conclusion is not justified in the light of the record before us and we must therefore hold that this assignment of error is wholly without merit and is not supported by the record. In conclusion, we observe that the defendant was fairly tried before a

---

1. See 21 Am.Jur.2d, 350, § 321; Johnson v. United States, 10 Cir., 380 F.2d 810 (1967); People v. Hughes, 57 Cal.2d 89, 17 Cal.Rptr. 617, 367 P.2d 33.

jury of his peers, the evidence overwhelmingly supported his guilt, and the trial court carefully and meticulously instructed the jury as to the law applicable, and the punishment was within the range provided by law. Under these circumstances we have uniformly held that the judgment and sentence will be affirmed. The judgment and sentence appealed from is accordingly affirmed.